UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X

UNITED STATES OF AMERICA,

    -against-

CLIFTON SAVAGE,

        Defendant.

———————————————————————X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/22/2026

25 Cr. 472 (CM)

## DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

McMahon, J.:

Defendant Clifton Savage is charged in the present indictment with, *inter alia*, murder in furtherance of a federal narcotics offense.

Before the court is defendant Savage's motion to suppress evidence recovered from his apartment at 1243 Findlay Avenue, Apartment 2, Bronx, New York, pursuant to a search warrant issued by a New York State Court Judge Jeffrey Rosenblueth, on December 30, 2021. (Def. Mot., Dkt. 22). He argues that the warrant was not supported by probable cause, failed to satisfy the particularity requirement, and was so deficient that no objectively reasonable officer could rely upon it in good faith. Savage argues that, at a minimum, the Court should conduct a *Franks* hearing to determine whether the affiant purposely or recklessly provided false information to the issuing judge.

For the reasons stated in the Government's opposition papers (Dkt. 23) and adopted herein, the motion to suppress is denied. There is no need to conduct a *Franks* hearing.

1

Applicable Suppression Law

A search warrant issued by a neutral magistrate is entitled to substantial deference and carries a "presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("A magistrate's determination of probable cause should be paid great deference by reviewing courts."). In reviewing a warrant application, the Court's task "is simply to ensure that the 'totality of the circumstances' afforded the [issuing judge] a 'substantial basis'" to find probable cause. *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 238)). Probable cause is a "practical, common-sense" inquiry that requires only a "fair probability" that evidence of a crime will be found in the place to be searched—not certainty or a prima facie showing of criminal activity. *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005); *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993).

Challenges to the truthfulness of a warrant affidavit are governed by the demanding standard set forth in *Franks*. To obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing" that: (1) the affidavit contained a deliberate falsehood or statement made with reckless disregard for the truth; and (2) the allegedly false statement or omission was necessary to the issuing judge's finding of probable cause. 438 U.S. at 156, 171; *see also United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). "The *Franks* standard is a high one," and allegations of negligence, innocent mistake, or disagreements over interpretation are insufficient. *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).

Notably, an affiant is not required to include every fact uncovered during an investigation in order to obtain a warrant. As the Second Circuit has explained, "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation."

2

*United States v. Awadallah*, 349 F.3d 42, 67 (2003). Courts have recognized that "all storytelling involves an element of selectivity," and that, "Every affidavit will omit facts which, in retrospect, seem significant." *United States v. Vilar*, No. S3 05 Cr. 621 (KMK), 2007 WL 1075041, at \*27 (S.D.N.Y. Apr. 4, 2007). That being so, a defendant must demonstrate that the omission was material. *Awadallah*, 349 F.3d at 64 ("It is material when the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding."). Thus, where a defendant claims that an affidavit omitted material information, he must show both that the omission was intentional or reckless and that the omitted information was material to a finding of probable cause. *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) ("[M]isstatements or omissions caused by 'negligence or innocent mistake[s]' do not warrant suppression") (internal citations omitted). Mere identification of additional facts that could have been included in a warrant affidavit does not entitle a defendant to a *Franks* hearing.

Finally, the Fourth Amendment's particularity requirement is satisfied where a warrant identifies the offense under investigation, describes the place to be searched, and limits the items to be seized by their relationship to that offense. *See United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017), abrogated on other grounds by *Carpenter v. United States*, 138 S. Ct. 2206 (2018). A warrant must enable executing officers to identify with reasonable certainty the items authorized for seizure. *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992). A warrant that limits the search to evidence of specified crimes and provides an illustrative list of items to be seized satisfies the particularity requirement. *United States v. Riley*, 906 F.2d 841, 844-45 (2d Cir. 1990).

3

Savage's Motion

Savage argues that the warrant application failed to establish probable cause because

Detective Falon Alickaj (the affiant) relied on speculative interpretations of surveillance footage:

> The warrant application depended almost entirely upon the unsupported assertion that surveillance footage depicted the same individual across multiple locations and time periods. Yet the affidavit omitted a critical fact apparent from the surveillance itself: the individual allegedly following the victims was wearing materially different clothing from the individual later observed entering and exiting 1243 Findlay Avenue. The affidavit identified no facial features, tattoos, body proportions, gait characteristics, or other objective identifiers capable of reliably bridging that discrepancy. Instead, the warrant application transformed speculation into factual certainty. Because the affidavit failed to establish probable cause, failed to establish a sufficient nexus between the alleged criminal conduct and the premises searched, and authorized an impermissibly broad search, suppression is required.

Dkt. 22 at 1.

Savage's argument fails, as it is based on an inaccurate characterization of what

Detective Alickai did—and did not—say in his affidavit, and in his sworn testimony

before Judge Rosenblueth.

*Probable Cause*

Far from speculative, the detective's affidavit sets forth a detailed, chronological

account of the defendant's movements in the hours surrounding the two murders. That

account began with surveillance footage placing the defendant in the immediate vicinity

of the victims at a bodega on Morris Avenue and East 168th Street in the early morning

hours of December 26, 2021. At approximately 3:03 a.m., a person the detective identified

as the defendant entered the bodega, made a purchase, and exited. (Dkt. 22-1 at 3). At the

4

time, and as noted by the affidavit, he was wearing a black and yellow bubble jacket, a gray knit cap, black high-top sneakers, and jeans. (*Id.* at 4).

The affidavit then tracked the defendant directly to the subject premises at 1243 Findlay Avenue. At approximately 3:27 a.m., the defendant was observed entering the subject premises. (*Id.*). Critically—and contrary to the defendant's assertion—the affidavit did not obscure what happened next; it expressly stated that at approximately 4:01 a.m., "the individual believed to be Clifton Savage" exited 1243 Findlay Avenue *wearing different clothing*— a dark blue hooded sweatshirt and dark blue sweatpants. The person that the detective identified as Savage was wearing the same black high-top sneakers but was no longer wearing jeans or a black and yellow bubble jacket, which is what he was wearing before he entered 1243 Findlay Avenue. (*Id.*).

Thus, the "critical fact" the defendant claims was omitted or concealed – the fact that the person identified by the detective as the defendant was wearing different clothing at different times -- was in fact affirmatively disclosed by the affiant in the warrant application itself. (Def. Mot. at 1).

The record goes even further. The transcript of the warrant application confirms that Detective Alikaj informed the issuing judge that the individual exiting 1243 Findlay Avenue immediately before the murders was wearing different clothing from the outfit he was wearing earlier in the evening and provided the issuing judge with a detailed description of that clothing. (*See* Tr. at 5-16, Attached to Government Opposition (Dkt. 23) as Ex. A). In other words, the issuing judge was fully aware of and considered the precise fact that the defendant now characterizes as a fatal omission.

The remainder of the affidavit confirms that conclusion. After exiting 1243 Findlay Avenue, at approximately 4:01 a.m. – wearing a different outfit -- the defendant walked back toward the victims. (Dkt. 22-1 at 4). Surveillance footage captured a male dressed in the same dark clothing following the victims along East 168th Street. (*Id.*). The shooting itself was recorded, capturing the perpetrator standing over one of the victims with his arms outstretched. (*Id.*). Immediately after the shooting, the perpetrator fled toward 1243 Findlay Avenue, and a male matching that same clothing and movement pattern was observed re-entering the building while looking back toward the scene of the murder. (*Id.* at 4-5). At approximately 4:33 a.m., the same individual, emerged again from 1243 Findlay Avenue. He was now wearing a burgundy bubble jacket, but he still wore the same gray knit cap and black high-top sneakers. (*Id.* at 5). That person walked to an area where he could observe the crime scene and later returned to 1243 Findlay Avenue. (*Id.*).

The affidavit thus established a continuous chain of observations linking the defendant to the victims, the crime scene, and the subject premises. That chain did not depend on a single identifying feature. It rested on timing, route of travel, repeated entry into and exit from the same residence, consistent identifying features, and corroboration through extended video review and photographic comparison.

Nor did the affidavit rely on clothing alone to establish identity. Detective Alickaj reviewed approximately a day and a half of additional surveillance footage in which the defendant's face and appearance were clearly visible, some of it taken during daylight hours. He compared those images to known photographs of the defendant. (*Id.* at 6). Based on that extended review, he confirmed that the defendant was the individual

depicted before, during, and after the shooting. (*Id.*). The persistence of distinctive items—most notably the gray knit cap and black high-top sneakers—further supported that identification.

The defendant's insistence that the affidavit was required to include references to tattoos, gait analysis, body proportions, or other particular biometric characteristics finds no support in the Fourth Amendment. (Def. Mot. at 1, 3, 4); *see United States v. Mandell*, 710 F. Supp. 2d 368, 374 (S.D.N.Y. 2010) (emphasizing the practical reason courts are cautious about omission based challenges: "allegations of omission potentially open officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit").

*Nexus to Apartment 2*

As for defendant's contention that the affidavit failed to establish a sufficient nexus between the murders and Apartment 2 at 1243 Findlay Avenue (Def. Mot. at 3-4)—that argument ignores both the contents of the affidavit and the sworn testimony presented to the issuing judge during the hearing on the warrant application. The affidavit established that the defendant was observed entering 1243 Findlay Avenue at approximately 3:27 a.m., exiting the building shortly before the murders, returning immediately after the murders, and then exiting the building again approximately thirty minutes later to look in the direction of the crime scene before returning inside. (Dkt. 22-1, at 3-5). These observations alone provided a substantial basis to believe that evidence relating to the murders — including the clothing worn by the shooter and the firearm used in the offense — would be found inside the apartment building.

7

Moreover, Detective Alickaj, in both the affidavit and in his application to Judge Rosenblueth, explained that he conducted database searches and determined that Apartment 2 was occupied by members of the Savage family, including Clifton Savage. (Dkt. 22-1, at 5 and Tr. at 10). The affidavit further states that Detective Alickaj reviewed law enforcement records and determined that Clifton Savage "has been arrested numerous times since 2000 and has listed 1243 Findlay Avenue, Bronx, New York as his residence." (Dkt. 22-1, at 6).

Thus, Alickaj's conclusion that Savage resided at Apartment 2 was corroborated by multiple independent records, including government databases, public records, prior arrest records, and information obtained during the investigation. During the warrant application, the issuing judge specifically questioned Alickaj regarding the results of those inquiries. (Tr. at 10). Alickaj explained that he had conducted computer searches, consulted records maintained by the Human Resources Administration, reviewed public records relating to ownership of the building, and searched available NYPD databases. (*Id.*). When asked by the Court what those searches revealed, Alickaj explained that he determined that the building was owned by Eddy Jones and that "Clifford [sic] Savage, Eddy Savage, and Donna Savage" were residents of the building. (*Id.*). When asked by the prosecutor to specify which apartment they occupied, Alickaj responded: "Second floor or apartment number two." (*Id.*). Far from relying on speculation, Alickaj specifically informed the issuing judge that multiple independent sources of information identified Clifton Savage as a resident of Apartment 2. Accordingly, the issuing judge

8

had sufficient information to conclude that there was a "fair probability" that evidence of the crime would be found at Apartment 2.

*Defendant Is Not Entitled to a Franks Hearing*

Savage has failed to make the substantial preliminary showing necessary to warrant a hearing under *Franks*. The defendant fails to identify any knowingly false statement or material omission in the warrant application. His disagreement with Detective Alickaj's interpretation of the surveillance evidence may be fodder for cross-examination at trial, but it does not satisfy the demanding standard for a *Franks* hearing. Accordingly, the defendant's request for a *Franks* hearing is denied.

*Particularity Requirement*

Contrary to the defendant's assertions, the warrant application was neither "overbroad" nor "fail[ed] to satisfy the Fourth Amendment's particularity requirement." (Def. Mot. at 5-6). The warrant authorized the seizure of three categories of evidence: (i) firearms and ammunition; (ii) clothing that the suspected shooter was seen wearing at various points in time on the morning of December 26, 2021; and (iii) papers and effects, such as bills and identification, to "establish ownership of the premises and connect persons found therein to the premises." (Dkt. 22-1, at 1-5). The warrant thus provided executing officers with clear guidance regarding the scope of the search and the items to be seized.

The warrant was likewise not overbroad. The defendant's challenge focuses exclusively on the authorization to seize documents reflecting ownership or occupancy of the premises. But that authorization was narrowly limited to evidence establishing who

9

resided in or controlled Apartment 2—a fact directly relevant to whether the defendant lived there and therefore could have stored evidence of the murders at that location. (Def. Mot. at 5-6). The search for documents had a clear limitation—it was limited to papers and effects "tending to establish ownership of the premises and connect persons found therein to the premises." (Dkt. 22-1, at 1, 2, 7). Those types of documents have evidentiary value to the extent they show that, as law enforcement believed, *see* Dkt. 22-1, at 5-6, the defendant resided at, and therefore stored items (including evidence of the double homicide) in, the subject premises. There is neither a legal nor factual basis for claiming that the limited set of evidence sought in the warrant application was anything other than particularized, narrow in scope, and therefore proper.

*Good Faith*

Even if the Court were to conclude that the warrant lacked probable cause or was otherwise deficient—and to be clear I have reached exactly the opposite conclusion — suppression would still not be warranted as the executing officers acted in objectively reasonable reliance on a warrant issued by a neutral judge.

There are only four narrow circumstances in which the good faith exception does not apply—namely, where: (1) the issuing judge was knowingly misled; (2) the issuing judge wholly abandoned his judicial role; (3) reliance on the warrant by law enforcement is unreasonable because the application so lacks indicia of probable cause; and (4) the warrant is facially deficient. *See Clark*, 638 F.3d at 100 (citing *Leon*, 468 U.S. at 922). None of those circumstances is present here.

10

Detective Alickaj provided a detailed fact-based explanation linking the defendant to the murders and to the premises searched, which was supported by video surveillance footage and other law enforcement investigation evidence. Thus, there is no basis for finding that the issuing judge was "knowingly misled" or "wholly abandoned" his judicial role, that probable cause was wholly lacking, or that the warrant was otherwise facially deficient. No "deep[er] inquiry into [the] reasonableness" of law enforcement's subsequent search is warranted here. *See, e.g.*, *Leon*, 468 U.S. at 922 (explaining that a warrant issued by the court "suffices to establish that a law enforcement officer has acted in good faith in conducting the search") (internal citations omitted); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (noting that the "issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause").

Savage's motion to suppress is denied.

Savage's trial will commence as previously scheduled on September 14, 2026.[1]

This constitutes the decision and order of the Court. It is a written decision.

Dated: June 22, 2026

_____
United States District Judge

BY ECF TO ALL COUNSEL

---

[1] The Government asks that the Court reconsider and vacate the portion of its scheduling order requiring production of Jencks Act material on August 21, 2026. (Dkt. 19). The Government says that it will produce Jencks Act material for its law enforcement witness on August 21 but wishes to delay Jencks Act production for its civilian witnesses to one week before trial, citing security concerns. That motion is granted.