USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __________
DATE FILED: 8-19-26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

UNITED STATES OF AMERICA,

-against-

CLIFTON SAVAGE,

Defendant.

---------------------------------------------------------------- x

25 Cr. 472 (CM)

DECISION ON GOVERNMENT'S AND DEFENDANT'S MOTIONS IN LIMINE

McMahon, J.:

Defendant Clifton Savage is charged in the present indictment with crimes related to his participation in the murders of Terrence Smith and Sergio Santana on December 26, 2021. Count One of the Indictment charges the defendant with possession with intent to distribute narcotics, in violation of Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(C). Count Two of the Indictment charges the defendant with using and carrying a firearm—which was brandished and discharged—during and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Sections 924(c)(1)(A) (i), (ii), (iii). Count Three of the Indictment charges the defendant with murder through the use of a firearm, in violation of Title 18, United States Code, Section 924(j). Count Four of the Indictment charges the defendant with murder through the use of a firearm, in violation of Title 18, United States Code, Section 924(j). Count Five of the Indictment charges the defendant with possession of ammunition after a felony conviction, in violation of Title 18, United States Code, Section 922(g)(1).

In anticipation of the trial of this matter scheduled for September 14, 2026, the Government and the defendant have filed various motions *in limine*. Those motions are decided as follows:

**The Government's *In Limine* Motions**

The Government seeks the following *in limine* rulings in advance of trial:

***1- Alternative Perpetrator Evidence***

The Government asks the court to preclude the defense from introducing evidence or arguing that Individual-1 (revealed in defendant's opposition papers to be Dominique Johnson) was or could have been the perpetrator of the December 26, 2021 murders of Smith and Santana. When Johnson was arrested approximately nine months after the murders (on September 4, 2022), he was in possession of the firearm used in the murders. It is the Government's position that the proposed evidence does not satisfy the threshold required for the admission of third-party culpability evidence, because (1) there is no evidence connecting Johnson to the murders themselves, (2) the evidence is irrelevant under Rule 401, and (3) should be excluded, nonetheless, under Rule 403 because whatever minimal probative value it possesses is substantially outweighed by the danger of confusing the issues, misleading the jury, and inviting speculation." Dkt. 30 at 3.

Savage strenuously objects to the Government's motion. He contends that there is substantial evidence that Johnson or some other person perpetrated the shooting of Smith and Santana: "Per the government's disclosures in Rule 16 productions, on September 4, 2022, at approximately 9:43 pm, Dominique Johnson was arrested in possession of the gun used to kill Santana and Smith. Johnson was arrested in front of 263 East Tremont Avenue, less than 1.5

miles away from the location of the double murder. At the time of his arrest, Johnson was 33 years old and stood approximately five-feet-ten-inches tall. On the date of his arrest – December 30, 2021 – Clifton Savage was 40 years old and stood roughly five-feet-eleven-inches-tall. Both men have dark skin tones." (Dkt 32 at 2). Savage argues that excluding the Johnson evidence would violate his constitutional rights: "'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.' *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986))." *Id.*

"Whether excluding alternative perpetrator evidence would deprive a defendant of a fair trial depends on the strength of the nexus between the charged crime and the third party whom the defendant seeks to implicate. *United States v. Gilmore*, No. 19 CR. 724 (JGK), 2021 WL 4151009, at *2 (S.D.N.Y. Sept. 13, 2021). "Where the nexus between the charged crime and the third party is strong, the defendant's right to present a complete defense entitles the defendant to present evidence of that nexus to the jury; where the nexus is weak, any probative value of the alternative perpetrator evidence may be substantially outweighed by the risk of prejudice and confusion of the issues." *Id.* As the Tenth Circuit Court of Appeals stated in *United States v. McVeigh*:

> In the course of weighing probative value and adverse dangers, courts must be sensitive to the special problems presented by "alternative perpetrator" evidence. Although there is no doubt that a defendant has a right to attempt to establish his innocence by showing that someone else did the crime, a defendant still must show that his proffered evidence on the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the asserted "alternative perpetrator." It is not sufficient for a defendant merely to offer up unsupported speculation that

> another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice.

153 F.3d 1166, 1191 (10th Cir. 1998) (internal citation omitted).

The Second Circuit Court of Appeals has adopted this same approach to evaluating third-party perpetrator evidence. *See Marvin Wade v. Mantello*, 333 F.3d 51 (2d Cir. 2003); *United States v. Wade*, 512 F. App'x 11, 13-14 (2d Cir. 2013). In *Mantello*, the defendant petitioned for a writ of habeas corpus on the grounds that the state trial court's exclusion of alternative perpetrator testimony—which was affirmed by the Appellate Division of the New York State Supreme Court—violated the defendant's right to present a complete defense. At the trial court, Wade sought to argue that a third party had a motive to kill the victim and that the third party's gang had intimidated a key prosecution witness into falsely implicating the defendant. *See id.* at 54. But after defense counsel was allowed to question the witness concerning the victim's "gang membership and problems with gang members, the court ruled that, absent a satisfactory offer of proof, it would not permit further testimony regarding [the victim's] gang associations because such evidence was 'speculative and irrelevant.' " *Id.* at 60 (quoting the trial court transcript). The trial court determined that, unless the defense could offer evidence "connecting someone else with the commission of [the charged] crime," further testimony along these lines "was largely irrelevant and that any marginal relevance was outweighed by dangers of juror prejudice and confusion." *Id.* at 54, 60 (quoting the trial court transcript).

On direct appeal, Wade argued that by precluding Folk's testimony, the court violated Wade's right under the New York and federal constitutions to present a complete defense. The Appellate Division, however, affirmed Wade's conviction, holding that:

> The trial court did not improvidently exercise its discretion by limiting the defendant's examination of one of his witnesses. Even though a defendant has a right to introduce evidence that a person other than himself committed the crime (*see*, *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297), the evidence must do more than raise a mere suspicion that another person committed the crime. In this case, the defendant failed to show a clear link between the third party and the crime. [citations omitted].

*People v. Wade*, 666 N.Y.S.2d 467, 468 (1997). Wade sought, but was denied, leave to appeal to the New York Court of Appeals. *People v. Wade*, 92 N.Y.2d 862, 677 N.Y.S.2d 93, 699 N.E.2d 453 (1998).

Wade filed a petition for a writ of habeas corpus, again arguing that the trial court's ruling violated his right to present a complete defense, as did the Appellate Division's reliance, in rejecting his appeal, upon the "clear link" test for the admission of evidence of third-party culpability. *Wade v. Mantello*, 333 F.3d 51, 55 (2d Cir. 2003). The Second Circuit Court of Appeals conducted a "deferential" review of the Appellate Division's decision pursuant to the Antiterrorism and Effective Death Penalty Act, asking only whether the Appellate Division's decision "was contrary to, or involved an unreasonable application of," clearly established federal law as determined by the Supreme Court. *Mantello*, 333 F.3d at 57-59 (quoting 28 U.S.C. § 2254(d)(1)).

By a 2-1 vote, the panel held that the Appellate Division's affirmance was not an unreasonable application of clearly established federal law. *Mantello*, 333 F.3d at 62. The Hon. Barrington D. Parker, joined by the Hon. Judge Amalya L. Kearse, concluded that the trial court's exclusion of the alternative perpetrator evidence was not arbitrary, but rather involved an application of "conventional evidentiary principles"— namely, the evidence's limited relevance, the lack of a nexus between the charged crime and any third party, and the concerns also

expressed in Rule 403 such as prejudice and confusion. *See id.* at 60-62, 62 n.9. The Court of Appeals also concluded that the defendant's theory of third-party culpability lacked a "sufficient factual predicate," and that it rested on "a brittle chain on inferences" because the fact that "a third party may have borne animus towards the victim, standing alone, does little to establish that the third party committed the crime." *Id.* at 60-61.

Judge Oakes filed a dissent, in which he concluded that the petitioner was deprived of his constitutional right to present a complete defense.

> I am required to dissent. . . The trial court denied Wade the opportunity to present Folk's testimony on the ground that there was no "clear connection" between the shoot-out testimony and Bryant's murder. The appellate court based its denial of Wade's appeal on a long line of New York case law including, but not limited to, *People v. Aulet*, 111 A.D.2d 822, 490 N.Y.S.2d 567 (1985), which used the phrase "clear link" to describe the evidentiary showing necessary for admission of testimony on third-party culpability. The appellate court found that "in this case, the defendant failed to show a clear link between the third party [Folk] and the crime." *People v. Wade*, 245 A.D.2d 473, 666 N.Y.S.2d 467, 468 (1997).
>
> The "clear link" phraseology has since been abandoned by the New York Court of Appeals in *People v. Primo*, 96 N.Y.2d 351, 355, 728 N.Y.S.2d 735, 738, 753 N.E.2d 164 (2001). There, the Court of Appeals held the standard governing the admissibility of evidence of third-party culpability is "better described in terms of conventional evidentiary principles," where relevant evidence may be excluded if its "probative value is outweighed by the prospect of trial delay, undue prejudice to the opposing party, confusing the issues or misleading the jury." *Id.*
> In my view, the evidence of the shooting at Manny Bryant by Gene of the Paradise Gang had none of these effects. I therefore think the evidence, as contained in Folk's testimony, should have been admitted based on its probative value. I also note that the federal district judge who heard this habeas petition said that, had he been the trial judge, he would have admitted it.
>
> The constitutional right to present a defense is clear and unequivocal, there being "few rights ... more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35

> L.Ed.2d 297 (1973). The Compulsory Process Clause of the Fourteenth Amendment mandates that an accused may " 'put before a jury evidence that might influence the determination of guilt.' " *Taylor v. Illinois*, 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 46, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)). While the right to present evidence in one's defense is subject to "reasonable restrictions," *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), I believe it was an unreasonable application of Supreme Court law in this case to exclude the highly relevant evidence of the victim's being shot at by a gang member only three to four weeks before the ultimate shooting, especially because one identifying witness was beaten up by the gang the day after the shooting and prior to identifying Wade as the killer. I would therefore grant Wade's petition for habeas corpus.

*Wade v. Mantello*, 333 F.3d 51, 63 (2d Cir. 2003).

In *United States v. Julian Wade*, 512 F. App'x 11, 13-14 (2d Cir. 2013). the court of appeals held that the district court properly excluded testimony regarding a third party's drug arrest, which the defendant sought to introduce as alternative perpetrator evidence. While the third party had sold drugs out of the same apartment building where the drugs and weapon charged to the defendant were found, the third party's arrest came over six months after the defendant's arrest. *Id.* Further, the third party had sold drugs from a downstairs mailbox, while the defendant was charged with possessing drugs and a firearm that were found in an upstairs apartment that the defendant had recently left. *Id.* The court of appeals concluded that the third party's arrest was not "temporally or physically linked" to the charged crime and that the testimony "presented a risk of juror confusion and extended litigation of a collateral matter." *Id.* at 14 (citing Rule 403, and *Mantello*, 333 F.3d at 60). Moreover, the court stated that the exclusion of the testimony did not prejudice the defendant because he "remained able to present

equally useful evidence supporting his theory" of third-party culpability, including through examination of the person from whose apartment the drugs and firearm at issue were seized. *Id.*

The Government also cites *United States v. Gilmore*, No. 19 Cr. 724 (JGK), 2021 WL 4151009, at *3 (S.D.N.Y. Sept. 13, 2021), in support of its position:

> the Court held that evidence suggesting another individual committed the charged robberies was inadmissible because the defendant failed to establish the requisite nexus between that individual and the crimes. Relying on *McVeigh* and *Mantello*, the Court explained that "where the nexus is weak, any probative value of the alternative perpetrator evidence may be substantially outweighed by the risk of prejudice and confusion of the issues." *Id.* at *2. The Court concluded that, absent such a nexus, the proposed evidence was properly excluded under Rules 401 and 403 because it invited the jury to speculate regarding the guilt of an unrelated third party.

Dkt. 30 at 5. However, after reading *Gilmore*, I do not understand why the Government is relying on the case – because, in Gilmore, the evidence about a possible third-party perpetrator was admitted, not excluded.

In *Gilmore*, the defendant was charged with committing two gunpoint robberies of cab drivers in the Bronx during the early morning of July 26, 2019 (the "Charged Robberies"). The Government had moved *in limine* to exclude evidence that an individual other than Mr. Gilmore ("Individual-1") committed another, somewhat similar robbery on July 20, 2019 (the "Uncharged Robbery"). In an application for a search warrant in connection with Gilmore's case, a law enforcement officer described all of these robberies as forming a "pattern," and listed the factual circumstances that were common to all the robberies: the robber would hail a livery cab on the street or through a dispatch base; the robber would display a gun during the cab ride; and the robber would demand money and other valuables from the cab driver, sometimes driving off with the cab itself. Additionally, all the robberies occurred in the "same general area" in the

Bronx. Individual-1's DNA had also been linked to the Uncharged Robbery, and Individual-1 had been charged with drug and firearm offenses in a different case.

Relying principally on the *Mantello/Wade* line of cases, the Government moved to exclude evidence of the Uncharged Robbery under Federal Rules of Evidence 401, 403, and 404(b). Gilmore argued that he was entitled to offer this evidence of third-party culpability under the Federal Rules of Evidence and pursuant to his constitutional right to present a complete defense.

My colleague The Hon. John G. Koeltl allowed Gilmore to introduce the third party's (Individual 1's) involvement in the uncharged robbery, on the theory that it was similar to the robberies charged against the defendant. While there was no direct evidence directly linking the third party to the charged robberies, the court allowed evidence of the uncharged robbery. Judge Koeltl noted that the nexus between the crimes charged and the alternative perpetrator evidence was far stronger in Gilmore's case than the nexus proffered in the *Mantello/Wade* line of cases cited by the Government. He also pointed to the detective's statement about a "pattern" in the search warrant application. While the detective's out of court statement of opinion was not admissible at trial, it supported the court's decision to allow evidence of the uncharged robbery as tending to show that someone other than the defendant had had committed all the robberies. *Gilmore*, No. 19 CR. 724 (JGK), 2021 WL 4151009, at *4 (S.D.N.Y. Sept. 13, 2021).

In this case, the nexus between the crimes charged and the alleged alternative perpetrator is stronger than in the cases cited by the Government, though admittedly not as strong as it was in *Gilmore*. Savage was identified by a detective as the perpetrator from video surveillance footage that was studied by the case detective. Savage's defense — as gleaned from his earlier

motion to suppress — is that someone other than Savage is the person whose image was captured by the surveillance cameras. To that end, Savage seeks to introduce evidence that Johnson — who admittedly resembles Savage in age, height, and complexion — was arrested in possession of the murder weapon, less than 1.5 miles away from the location of the murders. (Dkt 32 at 2). Savage is not pointing the finger at some random person who looks like him and saying let me introduce evidence that he might be the person in the video; rather, he points to a person who was carrying the gun that was actually used to kill the victims, arguing, "That guy looks a lot like me and he had the gun." The evidence Savage seeks to introduce does not rest on "a brittle chain of inferences" that the *Mantello* Court found unworthy of reliance.

The fact that the murder weapon was not found in Johnson's possession until months after the murders, and over a mile away from the site of the murders, does not negate the conclusion that there is enough nexus to warrant admission. *See United States v. White*, 692 F.3d 235, 247 (2d Cir. 2012) ("The fact that White's theory requires a chain of complex reasoning, does not mean that it is not relevant. "The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved ... does not render the evidence irrelevant.") (quoting *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970)) (additional quotation marks and citations omitted). Any inferential nexus probative of an alternative perpetrator's commission of the charged crimes is sufficient for admission. *See United States v. Serrano*, 192 F. Supp. 3d 407, 412 n.2 (S.D.N.Y. 2016) (admitting evidence that a third party committed the charged crime where "the Government has disclosed that the ammunition was found in a gray plastic container of the floor of the closet, underneath a laundry bag that appeared to contain older purses. As discussed below, [the third party's] self-inculpatory statements imply

that he used women's purses stored in that closet to transport firearms. Therefore, [the defendant] has demonstrated a nexus between the crime charged and the asserted alternative perpetrator.") (quotation marks, citations and modifications omitted). The Government will have ample opportunity, through cross examination and by presenting its own affirmative evidence, to negate Savage's argument that the police arrested the wrong man.

Precluding the Johnson evidence would be unduly, and perhaps fatally, prejudice Savage's defense. *See, e.g., Gilmore*, No. 19 CR. 724 (JGK), 2021 WL 4151009, at *4 (admitting third-party perpetrator evidence where "there is no indication that Mr. Gilmore has 'equally useful' evidence of third-party culpability; the Government seeks to exclude Mr. Gilmore's best—and perhaps his only—alternative perpetrator evidence."); *United States v. Johnson*, 529 F.3d 493, 500 (2d Cir. 2008) (citation omitted) ("Probative value is also informed by the availability of alternative means to present similar evidence."). A Court must be careful not to apply evidentiary rules "mechanistically to defeat the ends of justice," especially where the result is the exclusion of "testimony ... critical to [the] defense"). *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)

Savage's proffered alternative-perpetrator evidence — evidence derived from Government pursuant to its disclosure obligations — suggests a plausible link between Johnson and the murders of Santana and Smith. Savage will be permitted to use the evidence in his defense. The Government, of course, will be permitted to, and no doubt will, attack the value of the Johnson evidence on many grounds, including, perhaps, with expert testimony about how weapons often pass hands in the criminal underworld and are used to commit unrelated crimes by unrelated perpetrators.

**2- *Victims' Prior Criminal History***

The Government is moving to preclude the defense from offering evidence at trial of the criminal history of the victims' (Santana and Smith). The defense says in response to the Government's motion that it does not intend to offer evidence of the victims' criminal history but ultimately takes the position that the issue is not ripe for adjudication because it does not know what, if any, convictions the Government is actually seeking to preclude: "the government provides little more than an analytical framework for preclusion and, therefore, this issue should be addressed when it arises."

The defense is correct. The motion is premature.

Although the Government does not explicitly say that it intends to introduce statements by either victim, it makes a hypothetical argument that, if it were to do so, the defense should be precluded from attempting to impeach the victims' credibility with the victim's prior convictions.

Rule 806 does permit the credibility of certain non-testifying declarants to be attacked as though the declarant had testified. *See United States v. Shyne*, 617 F.3d 103, 108–09 (2d Cir. 2010) (explaining that, "for impeachment purposes, Rule 806 treats a declarant speaking in furtherance of the conspiracy as if he were a witness"); *see also United States v. Friedman*, 854 F.2d 535, 570 (2d Cir. 1988) (explaining that Rule 806—by its own terms may—applies only to hearsay declarants). But Rule 806 applies only when a hearsay statement, or a statement specified in the Rule, has been admitted into evidence. *See* Fed. R. Evid. 806. It does not permit a party to introduce a deceased person's criminal history untethered to the credibility of an admitted statement.

Accordingly, if the Government intends to offer out-of-court statements from one or both victims it must reveal that intention now, together with any impeachment material for the declarant victim. The Court cannot and will not rule in a vacuum.

**3- *Text Message Recovered from Defendant's Cellphone***

The Government asks that the Court admit at trial a text message recovered from the defendant's cellular telephone that was received on December 17, 2021 — just nine days before the charged murders — from the telephone number assigned to the cellphone recovered from Terrence Smith's body. The message states: "Leave me alone bro wrd."

The Government argues that the test message is admissible because (1) it is not hearsay within the meaning of Rule 801(c), and (2) even if the Court were to conclude otherwise, the message remains admissible because it demonstrates Smith's then-existing state of mind under Rule 803(3).

Defendant argues that the Government is really offering the statement for its truth: "the government intends to prove that Smith and Savage were rival drug dealers and that the text between the two men is evidence of motive. Accordingly, the statement is inadmissible hearsay. *See, e.g., United States v. Reid*, No. 09-CR63 EBB, 2010 WL 4956116, at *1 (D. Conn. Dec. 1, 2010) ("The mere identification of a relevant non-hearsay use of such evidence, however, is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice.") (quotation marks and citations omitted)." (Dkt 32 at 4).

The statement will be admitted.

Rule 801(c) defines hearsay as an out-of-court statement offered "to prove the truth of the

matter asserted." Fed. R. Evid. 801(c). The threshold question, therefore, is whether the communication contains an assertion capable of being true or false. It does not. Smith's text — "Leave me alone bro wrd" — does not assert a historical fact. Instead, it directs the defendant to cease contacting or interacting with Smith. Because the message contains no factual proposition whose truth can be proved or disproved, it falls outside Rule 801(c)'s definition of hearsay.

The Second Circuit has repeatedly recognized this fundamental distinction. In *United States v. Bellomo*, the Court held that "[s]tatements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay." 176 F.3d 580, 586 (2d Cir. 1999) (citing *United States v. Stratton*, 779 F.2d 820, 830 (2d Cir. 1985)). Likewise, in *United States v. Dawkins*, the Second Circuit held that the statement, "do not accept money from these people," was admissible because it "was an order, i.e., an imperative rather than a declarative statement, and it was offered not for its truth, but for the fact that it was said. It was therefore not hearsay." 999 F.3d 767, 789 (2d Cir. 2021). Most recently, the Second Circuit reaffirmed that principle in *United States v. Gillier*, concluding that commands are not hearsay because they are offered for the fact that they were uttered rather than for the truth of any factual assertion. No. 23-6280, 2024 WL 4344732, at *2 (2d Cir. Sept. 30, 2024) (summary order).

The text message at issue fits squarely within this well-established rule. Smith's message — "Leave me alone bro wrd" — is not a factual assertion. It does not state that the defendant committed any particular act, nor does it describe any past or present event. Instead, it is a straightforward directive instructing the defendant to cease contacting or interacting with Smith.

Like the directive in *Dawkins*, the message is an imperative. Its evidentiary significance lies not in whether Smith objectively should have been left alone, but in the fact that he communicated that directive to the defendant only nine days before the murders.

Indeed, the Government could not possibly offer the message for its truth, because an imperative cannot be characterized as true or false; it merely conveys Smith's instruction to the defendant. Accordingly, Rule 801(c) is inapplicable.

District courts within this Circuit have consistently applied these same principles when evaluating electronic communications. In *United States v. Glover*, the court recognized that email messages admitted to establish the nature of communications between individuals, rather than to prove the truth of their contents, are not hearsay. No. 24 Cr. 370 (VSB), 2025 WL 1580848, at *11 (S.D.N.Y. June 3, 2025). Similarly, in *United States v. al Fawwaz*, the court reiterated that Rule 801(c) excludes only statements offered to establish the truth of what they assert and does not reach out-of-court utterances admitted for another legitimate evidentiary purpose such as electronic computer messages. No. 98 Cr. 1023 (LAK), 2015 WL 13514090 (S.D.N.Y. Feb. 9, 2015) (holding that out-of-court statements contained in a forensic computer image were not hearsay because they were commands or threats directed to the witness and were not offered for their truth).

Here, the Government intends to offer the text message for precisely the reason approved by these authorities. The communication demonstrates that Smith and the defendant were in direct contact on December 17, 2021, only nine days before the charged murders, and describes the nature of their relationship immediately preceding the shootings, namely that Smith was directing the defendant to stop contacting or interacting with him. Those are proper, non-hearsay

purposes wholly independent of the truth of any factual assertion.

Accordingly, because the text message is an imperative command rather than an assertion of fact, it falls outside the definition of hearsay altogether and is admissible under Rule 801(c).

Even if the Court were to conclude that Smith's directive constitutes hearsay (and to be clear, the Court does not find the statement to be hearsay), the message would be independently admissible under Rule 803(3). That Rule excludes from the prohibition against hearsay "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition," although it does not permit "a statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3). The exception applies regardless of whether the declarant is available to testify. *Id.*

There is a distinction in the Rule between a declaration describing the speaker's present mental or emotional condition and a backward-looking account of the events that produced that condition. The former is admissible; the latter ordinarily is not. Thus, Rule 803(3) permits a jury to consider what a declarant presently wanted, intended, feared, believed, or felt, but it may not be used as a vehicle for proving the truth of the declarant's account of another person's prior conduct. *See United States v. Dawkins*, 999 F.3d 767, 789–90 (2d Cir. 2021) (distinguishing a statement reflecting a declarant's contemporaneous motive or intent from an assertion of fact concerning past events).

Smith's text message falls on the permissible side of that line. The words "Leave me alone bro wrd" express Smith's contemporaneous desire that the defendant cease contacting, approaching, or otherwise interacting with him. The statement does not recount a prior event. It does not identify anything that the defendant previously said or did. Nor does it ask the jury to

accept as true any historical accusation against the defendant. Instead, the message directly communicates Smith's then-existing attitude toward the defendant and his present intention to terminate or avoid further interaction with him. The Second Circuit's decision in *United States v. Quinones* supports admission on precisely this basis. 511 F.3d 289, 312 (2d Cir. 2007). There, the court explained that "the mere utterance of a statement, without regard to its truth, may circumstantially evidence the state of mind of the declarant, and as such, does not constitute hearsay." *Id.* (quoting *Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) (internal quotation marks omitted)).

That reasoning applies directly here. Smith's instruction that the defendant leave him alone is circumstantial — and indeed direct — evidence that Smith wanted to distance himself from the defendant on December 17, 2021. The Government need not prove that Smith's desire was justified or establish what preceding interaction prompted the message. The relevant point under Rule 803(3) is that Smith contemporaneously expressed a desire to end or avoid further interaction with the defendant.

Defendant argues, without citing any authority, that since the Government is actually introducing the statement to prove Savage's motive in committing the murders, "only Clifton Savage's state of mind is probative– proof of Terrence Smith's state of mind simply has no bearing on the outcome of the trial and thus cannot serve as a proper non-hearsay purpose." But that is not how the rule works. In considering the admissibility of a statement pursuant to Rule 803(3) the Court's focus is solely on whether the statement is an articulation of the declarant's "then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition." It does not matter whether the declarant is the defendant or someone else. And of

course, Savage is free to argue to the jury that Smith's state of mind is of no importance to the issues they have to decide.

The statement will be admitted.

**4- *Savage's Prior Prosecution and Acquittal***

The Government ask the Court to preclude the defense from introducing evidence of, referring to, or otherwise informing the jury, that he was acquitted in Bronx County Supreme Court of state charges arising from the events of December 26, 2021. The Government further requests that the Court prohibit the defendant from eliciting testimony regarding the prior acquittal during cross-examination of Government witnesses or otherwise suggesting to the jury that another jury previously found him not guilty of these offenses.

The motion is granted.

The Second Circuit has held that evidence of a prior acquittal is generally irrelevant in a subsequent criminal trial. As the Court explained in *United States v. Viserto*:

> A judgment of acquittal is relevant to the legal question of whether the prosecution is barred by the constitutional doctrine of double jeopardy or of collateral estoppel. But once it is determined that these pleas in bar have been rejected, a judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted. 596 F.2d 531, 537 (2d Cir. 1979); *see also United States v. Burrell*, 43 F. App'x 403, 406–07 (2d Cir. 2002) ("[a] judgment of acquittal is not generally admissible to rebut inferences that may be drawn from other evidence, and the acquittal did not establish that [the defendant] was not guilty."); *United States v. Mahaffy,* 693 F.3d 113, 126 n. 9 (2d Cir.2012); *United States v. Marrero-Ortiz*, 160 F.3d 768, 775 (1st Cir. 1998) (same).

*Viserto*, 596 F.2d at 537. Neither collateral estoppel nor double jeopardy has any application here. This prosecution is constitutionally permissible under the dual-sovereignty doctrine. The fact that a state jury previously acquitted him therefore has no bearing on whether the

Government can prove the federal offenses charged in this case. District courts within the Second Circuit have consistently applied this principle. *See, e.g., United States v. Ashburn*, No. 11 Cr. 303 (NGG), 2015 WL 729818, at *2 (E.D.N.Y. Feb. 19, 2015) ("The Second Circuit has long held that absent claims of preclusion—whether based on collateral estoppel or double jeopardy—evidence of prior acquittals is not relevant at trial.") (citing *Viserto*, 596 F.2d at 537)); *United States v. Amato*, No. 03 Cr. 1382 (NGG), 2006 WL 1495497, at *3 (E.D.N.Y. May 26, 2006) ("The court finds that evidence of Locurto's acquittal is irrelevant in the instant case, and, in any event is inadmissible hearsay.").

Accordingly, defendant is precluded from:

1. referring to, mentioning, or introducing evidence that the defendant was acquitted in Bronx County Supreme Court of charges arising from the events of December 26, 2021;

2. suggesting, directly or indirectly, that another jury previously found the defendant not guilty of those charges;

3. eliciting testimony during cross-examination concerning the outcome of the prior state prosecution; and

4. making any argument during jury addresses that invites the jury to consider the prior acquittal in determining the defendant's guilt in this case.

And when counsel inevitably attempt to impeach a witness's immediate trial testimony with the witness's testimony from the prior state trial, counsel are to refer to the prior testimony as "testimony given under oath in a prior proceeding involving these matters."

**5- *Unconscious Bias***

The defendant asks this Court to require prospective jurors to view a ten-minute "unconscious bias" video developed by the United States District Court for the Western District of Washington and has submitted a proposed jury instruction on the same subject.

The Government objects and asks the Court to instruct the jury on bias as it normally does during *voir dire* and in its jury instructions.

The Court will instruct the jurors—as it does at every trial—that they are to decide the case solely on the evidence and without bias or prejudice toward either party. The Court will ask the jurors numerous questions during *voir dire* designed to tease out those jurors who might be harboring bias, whether for or against the Government or the defendant. The Court will not be showing the Western District of Washington video. *See United States v. Green*, No. 22-3217, 2024 WL 4488577, at *3 (2d Cir. Oct. 15, 2024) (finding that refusing to show prospective jurors the same video on implicit bias from the Western District of Washington and failing to ask them questions about racial bias did not amount to an abuse of discretion).

**6- *Crime Scene Photographs***

The Government asks that it be allowed to admit a limited number of photographs (20) depicting the crime scene. The Court has viewed the photographs. Only one of the photographs shows the uncovered body of one of the victims— the victim is lying fully clothed, slightly twisted, on the street pavement, with a trail of blood leading away from his body. The remaining photographs depict ballistics evidence (i.e., shell casings, etc.) and the crime scene geography. The Government appears to have curated its selection of photos to tell its theory of the case without improperly inflaming the jury's emotions. The proposed photographs probative value is not substantially outweighed by any danger of unfair prejudice. Accordingly, they are admissible under Federal Rules of Evidence 401, 402, and 403.

**<u>Savage's *In Limine* Motions</u>**

For the Court's ruling on Savage's *in limine* motions:

***1- Detective Faton Alickaj Testimony***

Savage asks the Court to preclude New York City Police Department Detective Faton Alickaj from identifying Savage as the person depicted in the various surveillance videos. He contends that a person who was not an eyewitness to a crime should not be permitted to testify that the defendant is the perpetrator depicted in a photo or video— a determination that must ultimately be made by the jury as trier of fact. In this case exclusion of the testimony is particularly sought because of Savage's "alternative perpetrator" defense.

Because identifying whether a person shown on video surveillance footage is the defendant is ultimately for the jury to determine, the defense argues that testimony in which a witness testifies that someone in a video is a defendant should be admitted only where the witness is sufficiently familiar with the defendant so that his testimony would be reliable. Here the defense argues that the Government will not be able to show that Detective Alickaj – the detective who concluded that Savage was the person shown in the surveillance video – was sufficiently familiar with Savage to make his identification testimony helpful to the jury. Savage also argues that there is no reason for such testimony because there is no obstacle to the jurors' making this particular identification for themselves. Finally, Defendant is concerned that testimony from a law enforcement officer may pose additional concerns by drawing attention to a defendant's prior interactions with the police. (*Id.* at 2).

The Government, of course, opposes the motion arguing that Det. Alickai's testimony is admissible under Fed. R. Evid. 701, was not the product of unduly suggestive identification

procedures, and is consistent with Fed. R. Evid. 403.

According to the Government, Det. Alickaj is expected to testify about items recovered from the defendant's apartment during the execution of a search warrant. This includes clothing matching the appearance of the clothes worn by the defendant prior to and during the murders, as confirmed through surveillance footage. He will also testify about the crack cocaine recovered from the defendant's person at the time of his arrest.

In connection with that testimony, Det. Alickaj is expected to describe the investigative steps he undertook prior to the search and the defendant's arrest— steps that ultimately allowed him to obtain a search warrant for Savage's apartment. These steps included observing the surveillance footage of a man leaving the Findlay Residence before the murders and running back to the Findlay Residence after the murders. He will testify that his investigation included comparing photographs of the defendant to surveillance footage stills of the suspect, unmasked and in broad daylight. After undertaking those and other investigatory measures, Det. Alickaj determined that there was probable cause to believe the defendant was the person depicted in the surveillance footage. These steps led Det. Alickaj to then seek and obtain a search warrant for the defendant's residence.

Detective Alickai will be permitted to testify that, as part of his investigation, he concluded that Savage was the person captured in the surveillance videos.

The Second Circuit has repeatedly held that investigator testimony is "permissible lay opinion testimony under Rule 701," "so long as it is based on his investigation and reflected his investigatory findings and conclusions," as well as his perceptions. *United States v. Rigas*, 490

F.3d 208, 222-224 (2d Cir. 2007) (finding that law enforcement testimony about his investigation was based on his own observations, helpful to the jury, and not based on specialized knowledge); *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004) (testimony about the witness's investigation and "his investigatory findings and conclusions" deemed "admissible pursuant to Rule 701 of the Federal Rules of Evidence because it was based on his perceptions"); *see also Dinler v. City of New York*, No. 04 Civ. 7921 (RJS) (JCF), 2012 WL 4513352, at *17 (S.D.N.Y. Sept. 30, 2012) (admitting, as permissible lay opinion testimony under Rule 701, an NYPD deputy commissioner's testimony about "findings and conclusions relating to his own investigation").

Even assuming Detective Alickaj's testimony could be considered identification testimony, rather than permissible testimony about his investigation and the investigative findings and conclusions he reached, that testimony is nevertheless permissible under Rule 701. Indeed, courts in this District have routinely admitted lay opinion identification testimony made by police officers, where the officer has had interactions with a defendant similar to those present here. For example, in *United States v. Scott*, 21 Cr. 429 (AT), 2022 WL 1026725, at *6 (S.D.N.Y. Apr. 5, 2022), the defense sought to preclude testimony of the arresting officer identifying the defendant on surveillance footage, including on the grounds that the testimony was inadmissible lay opinion testimony. The Court disagreed and denied the defense motion, finding that the agent's anticipated testimony and opinion would be based on his review of the surveillance video and "his direct and personal observations of the defendant during his arrest," rather than on any specialized knowledge. The Court also determined that "the testimony will be helpful" to a jury because the "witness had the opportunity to observe the [d]efendant's gait, facial features, and

demeanor." *Id*

Moreover, there is nothing "unduly suggestive" about Detective Alickaj's determination that Savage was the person who commited the murders that were under investigation. Nothing in the record suggests that the detective had any inkling of who the shooter was at the start of his investigation. Nor was this a case where, before making his identification determination, Detective Alickaj was shown a single photo of the defendant's face or received hints from other law enforcement officers that the person in the surveillance footage was the defendant. Rather, Detective Alickaj was looking at the surveillance videos and comparing the person depicted in those videos with photographs of people in an NYPD database, in a purely investigatory fashion. Only after taking these investigative steps did Alickai reach his investigatory conclusion that the defendant was the person depicted in the surveillance footage (e.g., the defendant was the shooter). There was nothing suggestive — let alone unduly suggestive — about the process Detective Alickaj engaged in in order to identify the suspect.

Finally, the probative value of Detective Alickaj's testimony is not outweighed by the danger of unfair prejudice. Courts in this Circuit have routinely held that identification evidence of the sort proposed here is highly probative, particularly in a case where the identity of the shooter is likely to be a central issue at trial. *See United States v. Walker*, 974 F.3d 193, 205 (2d Cir. 2020) (affirming admission of probation officer's identification of defendant in surveillance video, rejecting defendant's argument that admission violated FRE 403, and remarking on "district court's discretion to manage" risk of prejudice posed by such testimony). Defendant will have an opportunity to attack Det. Alickai's identification of Savage during cross-examination as infirm for any number of reasons; for example, arguing that after finding a possible suspect in

the NYPD database, the detective's later identification of Savage on the grainy video was driven more by confirmation bias than honest evaluation. Moreover, the Court will be instructing the jurors that the determination of who is depicted on the surveillance video is — like all issues of fact in the case — ultimately for the jury to decide, and that they need to make their own decision based on what they see on the video – not what some detective claims to have seen – together with all of the other evidence in the case.

As for the defense's concern about the jurors speculating about the fact that there were photos of Savage in NYPD databases: The Court will also be instructing the jurors that that they are not infer from the fact that the detective found information on Savage in an NYPD database that Savage has been convicted of a crime or that he has a propensity to commit crimes.

***2- Felon-in-Possession Charge***

Savage asks that the Court sever or bifurcate the felon-in-possession of ammunition charge (Count 5) so that the jury does not hear about his prior felony conviction in the government's case-in-chief.

Savage does not dispute that, under Rule 8, the felon-in-possession count (Count Five) is properly joined with Count One, Two, Three, and Four of the Indictment. As the Government alleges: All five counts arise out of the same December 26, 2021 double homicide. There is a clear logical connection between the counts— namely, the defendant (i) possessed narcotics with the intent to distribute them (Count One); (ii) as a result of his drug rivalry with victims Smith and Santana, the defendant murdered the victims (e.g., the defendant possessed, carried, and used a firearm in furtherance of a drug trafficking crime (Count Two) and committed the murders through the use of a firearm (Counts Three and Four)); and (iii) the spent shell casings recovered

from the murder crime scene give rise to the felon-in-possession count (Count Five). The same evidence that supports Count One also forms the basis for Counts Two, Three, and Four, while the same evidence supporting Counts Two, Three, and Four also supports Count Five. *See Blakney*, 941 F.2d at 116 (holding joinder proper where "the same evidence may be used to prove each count").

This case is like the majority of cases involving felon-in-possession counts alongside other counts, in which there are no factors that meet the "heavy burden" required for a "showing that joinder will result in substantial prejudice." *United States v. Page*, 657 F. 3d 126, 129 (2d Cir. 2011). "[W]e hold that where, as here, there is a logical connection between the felon-in-possession count and the other charges, there is a similarity in the evidence necessary to prove the different charges, the trial court takes steps to limit the danger of prejudice and gives a proper limiting instruction, and the defendant is not substantially or unfairly prejudiced, a district court may exercise its sound discretion in denying a motion to sever a felon-in-possession count from other charges for trial." *Id.* at 132. And, even short of severance, a bifurcated trial, which would necessitate additional summations, the possible reopening of the Government's case, and multiple rounds of jury deliberation, is an unnecessary, inefficient, and unwarranted procedure here.

The case that Savage relies on most heavily, *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994), does not require severance or bifurcation in the first instance, but that "severance, bifurcation, *or some other effective ameliorative procedure*" be used. *Id.* at 492 (emphasis added). After *Jones*, the Second Circuit and courts in this District have repeatedly held that, to the extent there is a potential concern of prejudice, effective ameliorative procedures, such as a "sanitized" stipulation that does not describe the underlying facts of the felony conviction, or

limiting instructions, may suffice as an adequate remedy. *See, e.g.*, *Page*, 657 F. 3d at 129 (holding that the district court did not abuse its discretion in denying the motion to sever and instead allowing for a stipulation and limiting instruction); *id.* at 132 ("We reject [the defendant's] contention that a felon-in-possession charge must always be severed from other charges. *Jones* does not stand for that proposition."); *United States v. Lee,* 549 F.3d 84, 88, 94–95 (2d Cir. 2008) (affirming trial court's denial of motion to sever or bifurcate two counts, including a felon-in-possession count, into two trial phases); *United States v. Morris*, No. S4 11 CR. 912 (JFK), 2014 WL 1041309, at *4 (S.D.N.Y. Mar. 18, 2014) (denying motion to sever robbery counts from felon-in-possession count where felon-in-possession charge was "related to the conduct charged in the other counts").

Jurors are routinely asked to evaluate multiple charges involving different types of conduct, and courts presume that they are capable of doing so when provided with proper instructions without severing a count from a trial. There is no reason to believe the jury cannot do so here.

The Court declines to sever or bifurcate the trial of Count 5.

Wisely, the Government and defense have contingently agreed in writing, to a concise stipulation that does not describe the underlying facts of the defendant's prior felony convictions. The use of this stipulation at trial will mitigate any prejudice that might have resulted from the introduction of evidence of the facts relating to those prior convictions. Nevertheless, the Court will also instruct the jury that the defendant's prior conviction may be considered only for purposes of determining whether the Government has proven the elements of Count Five and that it may not be used for any other purpose. Such an instruction will eliminate any potential prejudice while preserving the efficiencies of a single trial. *See, e.g.*, *United States v. Paduch*,

No. 23 CR. 181 (RA), 2024 WL 778938, at *3 (S.D.N.Y. Feb. 26, 2024) ("In any event, any prejudice that does result can be cured with a limiting instruction."); *United States v. Little*, No. 19 CR. 276 (NSR), 2020 WL 3869126, at *3 (S.D.N.Y. July 9, 2020) ("[E]ven assuming such prejudice existed, Defendant has not established that it could not be rectified by limiting instructions to the jury."); *United States v. Samuels*, No. 18 CR. 306 (ER), 2020 WL 5517772, at *4 (S.D.N.Y. Sept. 14, 2020) (same).

***3 - Voir Dire***

Finally, Savage asks the court to permit Government and defense counsel 30 minutes each to question the jury venire. The request is denied.

Allowing counsel to ask questions of the jurors after this Court has conducted its *voir dire* examination will not further the interests of justice in this "complicated" case. This is actually not such a complicated case, and I see no reason for the Court to deviate from the standard practice in this district of having the judge conduct all *voir dire* questioning. The Court is confident that its time-tested jury selection process will ensure the empaneling of an impartial jury.

This constitutes the decision and order of the Court. The Clerk is to terminate the open motions at Dkts. 30, 31 and 33.

The Court will hold a final pretrial conference on September 10, and Savage's trial will commence September 14.

Dated: August 19, 2026

United States District Judge

BY ECF TO ALL COUNSEL