**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th floor*
*New York, New York 10278*

September 19, 2026

**VIA ECF**

Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *United States v. Clifton Savage*, S1 25 Cr. 472 (CM)**

Dear Judge McMahon:

The Government respectfully writes, as directed by the Court, in further opposition to the defense's Rule 29 motion, which was made orally during Thursday's proceeding, and in response to the Court's subsequent remarks, which were provided to the parties on Thursday, September 17, 2026 and Friday, September 18, 2026. (*See* Dkt. Nos. 50, 51.). As discussed below, this Court should: (1) deny the defendant's Rule 29 motion; (2) submit all of the counts of the Indictment to the jury; and (3) amend the Court's jury instruction regarding Counts Three and Four in order to track the language of 18 U.S.C. § 924(j)(1).

## I. The Elements of 18 U.S.C. §§ 924(c), 924(j)

When a defendant commits a drug trafficking offense, he commits a separate offense by using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, that drug trafficking offense. 18 U.S.C. § 924(c). The elements of a § 924(c) violation, as relevant here, are: "[f]irst, that the defendant committed a … drug trafficking crime[] for which he might be prosecuted in a court of the United States" and "[s]econd, that the defendant knowingly used (or carried) a firearm during and in relation to the commission of, or knowingly possessed a firearm in furtherance of the [drug trafficking] crime." Hon. Leonard B. Sand, 2 Modern Federal Jury Instructions-Criminal, Inst. 35-87; *see also* Court's Proposed Jury Instructions[1] at 29–33 ("The first element the Government must prove beyond a reasonable doubt is that, on or about December 26, 2021, the defendant used, carried, or possessed a firearm"; "The second element that the Government must prove beyond a reasonable doubt as to Count Two is that the defendant used or carried a firearm during and in relation to a drug trafficking crime, or, in the alternative, possessed the firearm in furtherance of a drug trafficking crime";[2] and "The third and final element the

[1] This refers to the proposed jury instructions in this case that the Court circulated to the parties on September 18, 2026.

[2] Unlike Count One, which charged only a substantive drug trafficking crime, in violation of 21 U.S.C. § 841(a)(1), Counts Two through Four are predicated on both substantive drug trafficking crimes, in violation of 21 U.S.C. § 841(a)(1), and *attempts* to commit substantive drug trafficking crimes, in violation of 21 U.S.C. § 846. The Court's proposed jury instructions correctly capture this difference. *See* Court's Proposed Jury Instructions at 29 ("Count Two charges the defendant with use of a firearm in connection with a drug trafficking crime, namely, the knowing and

Government must prove beyond a reasonable doubt with respect to Count Two is that the defendant knew he was using, carrying, or possessing a firearm."). Additionally, the jury may find that a defendant brandished and/or discharged the firearm, which results in an enhanced mandatory minimum sentence. *See* 18 U.S.C. § 924(c)(1)(A)(ii)–(iii); *see also* Sand, 2 Modern Federal Jury Instructions-Criminal, Inst. 35-87; Court's Proposed Jury Instructions at 34.

Additionally, "[a] person who, in the course of a violation of [§ 924(c)], causes the death of a person through the use of a firearm, shall … if the killing is murder (as defined in § 1111), be punished by death or by imprisonment for any term of years or for life." 18 U.S.C. § 924(j)(1). Put another way, "Section 924(j)[] prescribes different penalties—including, in certain circumstances, capital punishment—when 'a violation of [§ 924(c)]' causes death." *Barrett v. United States*, 607 U.S. 128, 131 (2026). § 924(c)(1)(A)(i) is a lesser-included offense of § 924(j),[3] which means that § 924(j) has the same elements as § 924(c)(1)(A), plus an additional element. *Id.* ("Every defendant subject to subject to subsection (j) has also, necessarily, violated subsection (c)[(1)(A)(i)]."). That additional element is set forth by the statute: "in the course of a violation of [§ 924(c)]" the defendant "causes the death of a person through the use of the firearm," and such "killing is murder." 18 U.S.C. § 924(j)(1). Or, as the Second Circuit explained it (abbreviating the first two elements), the elements of a § 924(j) murder are: "(1) knowing use of a firearm (2) 'during and in relation to any … drug trafficking crime'; and (3) 'in the course of' doing so, 'caus[ing] the death of a person through the use of a firearm.'" *United States v. Rivera*, 679 F. App'x 51, 53 (2d Cir. 2017) (quoting 18 U.S.C. § 924(c)&(j)); *see also* Court's Proposed Jury Instructions at 36–40 (setting forth the elements of Counts Three and Four—which are the § 924(j)(1) counts—and adding two elements to the § 924(c) instructions: "[t]he third element the Government must prove beyond a reasonable doubt is that the defendant caused the death of a person through the use of a firearm" and "[t]he fourth element of these counts that the Government must prove beyond a reasonable doubt is that the death of the relevant victim constituted murder.").

*Barrett*—which addressed the narrow question of whether, in establishing § 924(j) as a greater offense of § 924(c)(1)(A)(i), Congress intended to authorize one conviction and sentence per offense, or multiple convictions and sentences per offense, 607 U.S. at 131–32—did not purport to define or characterize § 924(j)(1)'s elements.[4]

---

intentional distribution, possession with intent to distribute, *and attempt to distribute and possess with intent to distribute, a controlled substance*." (emphasis added)).

[3] The Supreme Court declined to reach the question of whether "other versions of the § 924(c) offense" than § 924(c)(1)(A)(i) are, in fact, lesser-included offenses of § 924(j), as the jury has to make additional findings—such as brandishing and discharge—with respect to those versions, which findings are not necessary to establish a § 924(j) offense. *Barrett*, 607 U.S. at 139 n.10. This Court recognized the same issue (Dkt. 50 at 3), though it need not answer that question at this time.

[4] The question presented in *Barrett* was: "Whether the Double Jeopardy Clause permits two sentences for an act that violates 18 U.S.C. § 924(c) and § 924(j), a question that divides seven circuits but about which the Solicitor General and Petitioner agree." *Barrett v. United States*, Docket No. 24-5774, Petition for a writ of *certiorari*, at i (Oct. 15, 2024); *Barrett v. United States*, 145 S. Ct. 1307 (2025) (granting Barrett's petition for a writ of *certiorari* "limited to Question 1 presented by the petition").

## II. The Facts and Evidence in This Case

"In evaluating the sufficiency of the evidence, [this Court] ask[s] whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," and does so "draw[ing] all permissible inferences in favor of the government and … consider[ing] the evidence presented in its totality, not in isolation." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021).

The trial record provides ample evidence from which the jury could answer that question in the affirmative. Indeed, when the evidence is considered as a whole, viewed in the light most favorable to the Government, and accompanied by the reasonable inferences to which the Government is entitled, a rational jury could readily conclude beyond a reasonable doubt that the defendant's possession of the firearm was not merely coincidental to his drug trafficking, but was connected to and furthered that activity.

The jury saw evidence that, hours before the murders, the defendant stood outside his residence at 1243 Findlay Avenue with a firearm in his hand (GX 405-V(L)); that earlier that day he had been observed selling drugs in the same exact location (GX 405-H(L)); and that four days after the murders he was arrested with a distribution quantity of crack cocaine concealed on his body (Tr. 340:7-341:9; 398:22-400:1; GX-502). More significantly, Natalie Arzu testified that both the defendant and Smith sold crack cocaine in the area (Tr. 104:16-105:7; 105:23-106:5; 114:21-115:4; 115:16-18); that the defendant had approached Smith and asked about obtaining "work," meaning work selling drugs (Tr. 118:7-23); that Smith sold drugs for Banks, who controlled drug sales on the block (Tr. 141:24-143:6); and that Banks and his associates had previously assaulted the defendant (Tr. 119:3-120:10) and, on multiple occasions, pushed him away from the block and told him to leave (Tr. 121:12-21). Detective Alickaj's testimony and the surveillance evidence supplied additional context. In the hours immediately preceding the murders, Smith and Santana were engaged in repeated crack sales at the grocery store at 168th Street and Morris Avenue while the defendant remained outside, lingered, and repeatedly looked into the store. (Tr. 172:4-174:5; 174:19-175:24; GX 401-A). Less than an hour before the murders, Savage walked up and exchanged words with Smith inside the store while Smith was with his drug customers, returned to 1243 Findlay, and shortly thereafter the masked shooter emerged from that location. (Tr. 172:16-174:5; GX 409). The murders then occurred in the same immediate area where the competing drug activity had been taking place and where the defendant had last encountered the victims. (Tr. 170:11-171:2; GX 301). Taken together, this evidence permits the jury to find not merely that the defendant happened to be a drug dealer who possessed a gun, but that the firearm was possessed in connection with an ongoing territorial dispute over crack sales in that area and thus, the possession was during and in relation to, or in furtherance of, a drug trafficking offense.

## III. As the Court Already Found, There is Sufficient Evidence for a Jury to Find that Savage Used and Carried a Firearm During and in Relation to, and Possessed a Firearm in Furtherance of, a Drug Trafficking Crime (Count Two)

From the evidence presented at trial a jury could reasonably infer that Savage possessed his firearm in order to protect his territory and drug dealing. *See*, *e.g.*, *United States v. Harry*, 130 F.4th 342, 351 (2d Cir. 2025) (in "§ 924(c)(1) cases, we have explained that to find the requisite nexus between the firearm and the crime, the weapon 'at least must facilitate or have the potential of facilitating,' the crime", and, "[t]hus, 'the ultimate question is whether the firearm afforded

some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking.'" (quoting *United States v. DeJesus*, 219 F.3d 117, 122 (2d Cir. 2000); *United States v. Page*, 657 F.3d 126, 130 (2d Cir. 2011) (noting the "sufficient logical connection" between narcotics and gun counts because the "gun was an important 'tool' of [the defendant's] 'trade'—trafficking in narcotics"); *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) (explaining, in a § 924(c) sufficiency case, that "a drug dealer may be punished under § 924(c)(1)(A) where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself")); *United States v. Morgan*, 287 F. App'x 922, 923–24 (2d Cir. 2008) (finding that "the jury could reasonably have inferred a 'nexus between the firearm and the drug selling operation,' … from Mark Daley's testimony that Pryce told him that he needed a weapon because the marijuana business was dangerous, together with the fact that the handgun was found in the immediate proximity of about half a pound of marijuana in Pryce's apartment.").

## IV. There is Sufficient Evidence for a Jury to Find that Savage Caused the Death of Smith and Santana Through the Use of a Firearm in the Course of Committing a § 924(c) Offense

The jury heard evidence that Savage possessed his firearm in furtherance of his drug trafficking offense(s), including his attempted drug trafficking offenses, and that he shot two rival drug dealers in his drug territory, which territory was disputed with those rival drug dealers, shortly after selling in that area and shortly after confronting one of those rival drug dealers right by where he killed them. This evidence is sufficient to allow a jury to find that Savage murdered Smith and Santana in the course of committing a § 924(c) offense under any interpretation of the statute, as it presents sufficient evidence for a jury to find that Savage killed Smith and Santana in order to protect and/or secure his drug dealing territory and drug dealing business, even if Savage was not selling drugs at the second that he murdered Smith and Santana. *See*, *e.g.*, *United States v. Williams-Bey*, No. 20 Cr. 172 (MPS), 2023 WL 5286799, at *14 (D. Conn. Aug. 17, 2023) (collecting cases for the proposition that there is a sufficient nexus for § 924(j) where murder was after-the-fact retaliation); *United States v. Velez*, 170 F. App'x 146, 148 (2d Cir. 2006) ("The jury could reasonably conclude that Velez attempted to eliminate competing drug sellers through use of his firearm, thereby establishing a nexus.").

## V. This Court Can Instruct the Jury Consistent With the Statute and the Law

That brings this Court to the question that troubled it: what is the law regarding the requisite nexus between a § 924(j) murder and the predicate crime? Fortunately, the statute answers the question. Pursuant to § 924(j)(1), "[a] person who, *in the course of a violation of [§ 924(c)]*, causes the death of a person through the use of a firearm, shall … if the killing is murder (as defined in § 1111), be punished by death or by imprisonment for any term of years or for life." 18 U.S.C. § 924(j)(1) (emphasis added). The additional element that distinguishes a § 924(j) from a § 924(c) offense, therefore, is: "in the course of' doing so, 'caus[ing] the death of a person through the use of a firearm.'" *Rivera*, 679 F. App'x at 53 (quoting 18 U.S.C. § 924(j)(1)).

While at least one district court has concluded that "the Government need only prove that the murder was motivated in part by an intent to further the predicate drug trafficking crime," *Williams-Bey*, 2023 WL 5286799, at *16, the Second Circuit has not so required. To the contrary, in *Velez*, the Second Circuit divided the requirements for a § 924(j)(1) conviction: "[t]he conviction for murder with malice aforethought [under § 924(j)(1)] required findings of (i) premeditation and (ii) a nexus between the firearm used and the ongoing drug conspiracy," and "[t]he nexus element requires a showing that the gun afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." 170 F. App'x at 148 (internal quotation marks

omitted). That is, there are two findings: (1) the connection of the *firearm* to the predicate drug-trafficking conspiracy (necessary to find the § 924(c) predicate); and (2) the premeditation that gave rise to a § 924(j)(1) (as opposed to 924(j)(2)) conviction.

The Court has repeatedly posed difficult hypotheticals in which the question would be whether a firearm possessed in furtherance of a drug trafficking offense is used for a murder wholly unconnected to drug dealing or other federally prohibited activity. (Dkt. 50 at 2; Tr. 448–50). The answer is: if the jury finds that the defendant in that case committed the murder "in the course of" his § 924(c) offense, with the gun that is the gun in that offense, the statute says that the defendant is guilty. While a jury may find that a murder is sufficiently removed from the § 924(c) offense and is not committed in the course of the § 924(c) offense – that is an extremely fact-based question that would be best resolved by a jury and not a question that this jury needs to answer under the facts of this case.[5]

## VI. The Government's Proposed Jury Charge

Consistent with the above and the elements of 18 U.S.C. § 924(j), the Government respectfully proposes the following revisions to the draft jury charge for Counts Three and Four that the Court provided to the parties on Tuesday, September 15, 2026:

1. The first element the Government must prove beyond a reasonable doubt with respect to Count Three/Four is that on or about December 26, 2021, the defendant used, carried, or possessed a firearm.

2. The second element that the Government must prove beyond a reasonable doubt with respect to Count Three/Four is that the defendant either used or carried a firearm during and in relation to a drug trafficking crime, **or an attempt to commit a drug trafficking crime,** or possessed a firearm in furtherance of such a **drug trafficking crime, or an attempt to commit a drug trafficking** crime.

3. The third element the Government must prove beyond a reasonable doubt is that**, in the course of using or carrying a firearm during and in relation to a drug trafficking crime, or possessing a firearm in furtherance of a drug trafficking crime, or an attempt to commit a drug trafficking,** the defendant caused the death of a person through the use of a **that** firearm.

4. The fourth element of these counts that the Government must prove beyond a reasonable doubt is that the death of the relevant victim constituted murder.

5. The final element the Government must prove beyond a reasonable doubt for the offenses alleged in Count Three/Four is that the defendant knew that he was using, carrying, or possessing a firearm and that he acted knowingly in doing so.

In light of this instruction, the jury would be unable to convict unless it found that Savage used his firearm to murder Smith and Santana "in the course of" a § 924(c) offense, which is

[5] If the Court would like a better insight into how the jury reasoned through the issue—which is unnecessary because it would be instructed on the law as set forth in the statute—the Court with the parties can work out an additional question for a special verdict form.

precisely what the statute requires. The statute only requires that the murder be in the course of a § 924(c) offense *and* be committed with malice aforethought.

### VII. The Court Can Submit Counts Two, Three, and Four to the Jury

*Barrett* is a double jeopardy case. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *see also id.* at 365 ("Because respondent has been subjected to only one trial, it is not contended that his right to be free from multiple trials for the same offense has been violated.").

Accordingly, because the defendant is currently being tried in a single trial, there is no double jeopardy violation by the jury being instructed on—or returning a verdict on—offenses and their lesser included offense.[6] If the jury convicts the defendant on Counts Two, Three, and Four, at sentencing it will have to dismiss either Count Two or Counts Three and Four in order to avoid a double jeopardy violation; the Second Circuit recently set out the procedure for determining which to dismiss. *See United States v. Barrett*, 172 F.4th 210, 211–12 (2d Cir. 2026). But that is a bridge that the Court need not cross at this time.

### VIII. The Court Should Deny the Defendant's Rule 29 Motion As to Counts Three and Four of the Indictment

The defendant bears a "heavy burden" in challenging the sufficiency of the evidence under Rule 29. *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013). The Court must view the evidence "in the light most favorable to the government," *United States v. George*, 779 F.3d 113, 115 (2d Cir. 2015), consider the evidence "in conjunction, not in isolation," *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011), and "credit[] every inference that the jury might have drawn in favor of the government," *United States v. Cuti*, 720 F.3d 453, 461-62 (2d Cir. 2013). The Court may grant a judgment of acquittal only where the evidence of guilt is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted). Thus, the relevant question is whether, considering the Government's proof as a whole and drawing all permissible inferences in its favor, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Persico*, 645 F.3d at 105 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

---

[6] Indeed, this happens all the time. For example, a defendant tried on a § 841(b)(1)(A) count, where the jury may also return verdicts as to § 841(b)(1)(B) or § 841(b)(1)(C). There would be a double jeopardy violation if the Court imposed separate sentences for each § 841(b)(1) subsection, but there is no violation for the trial or verdict.

That standard is readily satisfied here. For the reasons set forth above, the evidence permits a rational jury to find each element of Counts Three and Four beyond a reasonable doubt. And because the Court must assess the Government's evidence collectively—not isolate individual pieces of evidence or choose among competing permissible inferences—the defendant's Rule 29 motion should be denied and Counts Three and Four should be submitted to the jury along with Counts One, Two, and Five. *See Cuti*, 720 F.3d at 461–62; *Persico*, 645 F.3d at 104–05.

Respectfully submitted,

JAMES M. McDONALD
United States Attorney
Southern District of New York

by: /s/
Dominic A. Gentile / Diarra M. Guthrie
Assistant United States Attorneys
(212) 637-2567 / 2463

cc: Counsel of Record (via ECF)